**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| IN RE: | **Livingston Township Fund One, LLC** | Case No. 23-002573-JAW |
| | Debtor | CHAPTER 11 |

**DEBTOR'S RESPONSE TO BOM'S MOTION FOR A**
**DETERMINATION THAT LIVINGSTON TOWNSHIP FUND ONE, LLC**
**IS A SINGLE ASSET REAL ESTATE DEBTOR**

COMES NOW, Debtor, by and through counsel, and responds to BOM's Motion for a Determination that Livingston Township Fund One, LLC is a Single Asset Real Estate Debtor as follows:

1.  On November 6, 2023, Livingston Township Fund One, LLC ("Livingston") commenced this proceeding pursuant to Subchapter V Chapter 11.

2.  BOM requests the Court to designate Livingston as a single asset real estate debtor and therefore ineligible to proceed under Subchapter V Chapter 11.

3.  Livingston owns and operates four buildings situated on five acres in Madison County, Mississippi. Debtor originally owned five buildings and additional land, but one building was previously subdivided and sold. Livingston currently has a contract for sale of another building which is pending Court approval. A portion of said building is situated on another parcel of land owned by B&S Holdings, LLC. Livingston plans to sub-divide the remaining property so that the other buildings can be sold or retained independently.

4.  Under current leases, Livingston's responsibilities for maintenance and repairs vary from building to building. In one building, which houses six tenants, Livingston is responsible for all maintenance and repairs needed to the property. In the remaining three buildings, Livingston is only responsible for maintaining and repairing the roof and foundation.

5.  Livingston provides regular janitorial services for some tenants.

6. Livingston provides a property manager to assist tenants with maintenance, janitorial, and other issues that arise.

7. A "single asset real estate" (SARE) debtor refers to a specific category of debtors under the United States Bankruptcy Code. It is defined in Section 101(51B) of the Bankruptcy Code as:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

The 5th Circuit Court of Appeals ruled that **all** the following requirements must be met for a debtor to be considered a SARE:

(1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units),

(2) which generates substantially all of the gross income of the debtor, and

(3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto

*In re Scotia Pacific Co., LLC*, 508 F.3d 214 at 220 (5th Cir. 2007)

8. The burden of proving that a debtor is subject to the SARE provisions of the bankruptcy code is on the moving party, BOM. *In re Yishlam, Inc.*, 495 B.R. 328, 330 (Bankr. S.D. Tex. 2013)

### IS THIS A SINGLE PROPERTY OR PROJECT?

9. The property belonging to Livingston is not located on a single parcel. A portion of the building subject to Livingston's Motion for Approval to Sell Property, Free and Clear of Liens, Granting a Replacement Lien and to Pay Real Estate Commission and Other Closing

Costs (Dk #32) is located on a parcel owned by B&S Holdings, LLC.  Livingston has an equitable interest in the real estate that is situated on a separate parcel of land.  As a portion of the building is situated on a separate parcel, the real estate does not constitute a single property.  When a property is comprised of multiple parcels, courts next analyze whether the parcels constitute a "single project".  *In re Nuovo Ciao-Di LLC*, 23-10068 (JPM) (Bankr. S.D.N.Y. Sep. 22, 2023)

10. To be considered a "single project", the real estate must be purchased, developed or sold pursuant to a "common plan or scheme", linked together by "common usage" or in pursuit of a "common purpose".  *In re Yishlam, Inc.* at 331.  *Yishlam* involved two properties that were operated as a condo and apartment complex respectively.  The court considered the distinctly different management of the two properties in determining that they did not constitute a common scheme or purpose.  *Id.* At 332.  Like Yishlam, Livingston manages its buildings in different ways.

11. In three (3) buildings ("NNN buildings"), the leases are triple net and tenants are responsible for their own repairs, maintenance and janitorial.  In the NNN buildings, income is solely derived from the real estate.

12. In the remaining building ("Full-Service Building"), Livingston offers tenants additional services such as janitorial services and maintenance. This means that if there is a leaking toilet or a need for HVAC system repair, Livingston takes full responsibility for addressing these issues. To ensure efficient management of these repairs, Livingston provides a property manager who oversees and coordinates all necessary janitorial and maintenance tasks.

13. Further, the four buildings host a variety of business types such as restaurants, a cooking school, a bar, liquor store, hair salon, boutique clothing stores and a gas station. These different uses support a finding that they are not operated as a common project.

14. Livingston's intention to subdivide and sell individual buildings, while concurrently retaining others, supports a finding that the real estate does not constitute a single property or single project at the present time. The buildings are worth more if sold individually than if sold collectively. Originally, there were five buildings on this parcel. However, one building was previously subdivided and sold. While the initial plan was to subdivide the entire property to have each building on its own parcel, Madison County's zoning laws complicate and increase the cost of this process more than usual. According to current regulations, property subdivision is limited to once per year without re-platting. To save costs, the decision was made to wait and subdivide as buildings are sold. In the absence of these considerations, the buildings would already be on separate parcels.

15. Each building on the property is distinct and separate, with vastly different intended uses. For instance, one building functions as a gas station, while another serves as an office space. Livingston's current business plan does not involve operating these buildings as part of a common project. The strategy includes selling certain buildings, with intentions to sell more, while retaining and leasing others. The optimal value for this property can be achieved by selling each building individually. Livingston's business plan is designed to support this property division, aiming to maximize the revenue generated by each building.

16. Notably, Livingston's strategic approach involves the pursuit of diverse revenue streams. An imminent sale of one building is already in progress, contingent upon the approval of the Court. The negotiation and contract for this sale were initiated prior to considering or

filing for bankruptcy. Additionally, active plans are in motion to subdivide the remaining property, facilitating the marketing and sale of other buildings. Ongoing negotiations are in progress for the sale of a second building.

17. Livingston's financial strategy will draw from multiple income streams, including NNN leases, full-service leases, and the outright sale of buildings. These different revenue streams show that Livingston will generate profits from each building in different ways and positions Livingston favorably to execute a plan supported by several distinct income sources. The different business strategies presently applied to each building show support for a finding that each building is a separate property/project that can be operated, or sold, independently.

## IS SUBSTANTIAL BUSINESS CONDUCTED OTHER THAN THE BUSINESS OF OPERATING THE REAL PROPERTY AND ACTIVITIES INCIDENTAL THERETO?

18. While all of Livingston's income is generated from its real estate, it is important to note that the debtor also provides services that are not directly related to the operation of the real property. This means that Livingston engages in activities beyond just leasing out the property.

19. Livingston manages four buildings, and the way in which they are managed differs. The income derived from leases in the three NNN Buildings is solely generated from the real estate itself. In other words, there are no substantial business activities conducted within these buildings other than the lease of the real property. However, the remaining Full-Service Building is where Livingston operates a significant business that goes beyond simply managing the real estate.

20. In the Full-Service Building, which is independently valued at over one million dollars, Livingston provides substantial services to its tenants. These services include regular janitorial services, making necessary repairs to the leased spaces as they arise and providing a

property manager who coordinates all these services. This service is comparable to what hotels provide to their guests. It is worth noting that while vacant land and residential apartment buildings are often considered SARE (Single Asset Real Estate) projects, hotels are rarely designated as SARE. *In re ENKOGS1, LLC*, 626 B.R. 860 at 863-864 (Bankr. M.D. Fla. 2021).

21. Unlike a residential apartment building with many units under one roof, Livingston owns 4 separate buildings. Livingston goes above and beyond the typical services provided by an apartment complex. Unlike apartment complexes, Livingston not only leases out the space but also offers janitorial services to its tenants. This level of service is not commonly found in apartment complexes, where landlords never regularly enter the leased apartments.

22. In the case of Livingston, their business model is more akin to that of a hotel. Just like hotels regularly enter the premises to ensure cleanliness, Livingston also enters the leased spaces to keep the property clean and well-maintained. It is important to note that the provision of janitorial services by Livingston is not for their own benefit, but primarily for the benefit and convenience of the tenants. This distinction is crucial because it highlights the level of care and service that Livingston provides to its tenants. By regularly maintaining and cleaning the leased spaces, Livingston aims to create a comfortable and enjoyable environment for its tenants. These services play a crucial role in attracting high-end tenants.

23. Livingston must repair and maintain each commercial space leased to a full-service tenant, much like a hotel must repair and maintain a hotel room. It does not matter that Livingston does not generate additional revenue by providing these services. *Id*. At 864. Sections 101(51B) and (51D)(A) of the Bankruptcy Code do not require a debtor to earn extra income from supplying extra services but instead requires the debtor to do something other than merely rent a space. *Id*. At 865.

WHEREFORE, Livingston respectfully requests that the Court deny BOM's Motion for a Determination that Livingston Township Fund One, LLC is a Single Asset Real Estate Debtor.

                                                Respectfully Submitted,

                                                Livingston Township Fund One, LLC

By:    /s/ Thomas C. Rollins, Jr.
          Thomas C. Rollins, Jr., MSB 103469
          The Rollins Law Firm, PLLC
          P.O. Box 13767,
          Jackson, MS 39236
          trollins@therollinsfirm.com
          601-500-5533
          ATTORNEY FOR LIVINGSTON TOWNSHIP
          FUND ONE, LLC

STEVEN H. SMITH, MSB #7610
Steven H. Smith, PLLC
4316 Old Canton Road, Suite 200
Jackson, Mississippi 39211
Ph: (601) 987-4800
email: ssmith@shsattorneys.com

EILEEN N. SHAFFER MSB #1687
Post Office Box 1177
Jackson, MS 39215-1177
(601) 969-3006
eshaffer@eshaffer-law.com

## CERTIFICATE OF SERVICE

I, Thomas C. Rollins, Jr., attorney for Livingston Township Fund One, LLC, do hereby certify that I have this date mailed, by United States Mail, postage prepaid, or electronically transmitted via CM/ECF Noticing, a true and correct copy of the above and foregoing *RESPONSE TO BOM'S MOTION FOR A DETERMINATION THAT LIVINGSTON TOWNSHIP FUND ONE, LLC IS A SINGLE ASSET REAL ESTATE DEBTOR* to the following on the day and year hereinafter set forth:

Jim F. Spencer, Jr., Esq.
Erin A. McManus, Esq.
Attorneys for Bank of Montgomery
jspencer@watkinseager.com
emcmanus@watkinseager.com

Craig M. Geno, Esq.
Subchapter V Trustee
cmgeno@cmgenolaw.com

United States Trustee
USTPRegion05.JA.ECF@usdoj.gov

Andrew Roberts Norwood
US Attorney's Office
Attorney for USDA and SBA
501 E. Court St., Suite 4.430
Jackson, MS 39201
drew.norwood@usdoj.gov, karlotta.banks@usdoj.gov

**SO CERTIFIED,** this the 30th day of November, 2023.

/s/ Thomas C. Rollins, Jr.
Thomas C. Rollins, Jr.