___



**SO ORDERED,**

**Judge Jamie A. Wilson**
**United States Bankruptcy Judge**
**Date Signed: January 2, 2024**

The Order of the Court is set forth below. The docket reflects the date entered.
___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**LIVINGSTON TOWNSHIP FUND ONE, LLC,**      **CASE NO. 23-02573-JAW**

**DEBTOR.**                                                                    **CHAPTER 11**

## ORDER ON BOM'S MOTION FOR A DETERMINATION THAT LIVINGSTON TOWNSHIP FUND ONE, LLC IS A SINGLE ASSET REAL ESTATE DEBTOR

This matter came before the Court for hearing on December 5, 2023 (the "Hearing") on BOM's Motion for a Determination That Livingston Township Fund One, LLC Is a Single Asset Real Estate Debtor (the "SARE Motion") (Dkt. #37) filed by BOM a/k/a Bank of Montgomery ("BOM"); the Debtor's Response to BOM's Motion for a Determination That Livingston Township Fund One, LLC Is a Single Asset Real Estate Debtor (Dkt. #87) filed by the debtor, Livingston Township Fund One, LLC ("Livingston"); and the Answer and Response to Motion for Determination That Livingston Township Fund One, LLC Is a Single Asset Real Estate Debtor (Dkt. #90) filed by Craig M. Geno, the Subchapter V Trustee, in the above-referenced bankruptcy case (the "Bankruptcy Case"). At the Hearing, Jim F. Spencer and Erin McManus represented BOM; Thomas Carl Rollins, Jr. and Eileen N. Shaffer represented Livingston; and Christopher J. Steiskal represented David W. Asbach, Acting United States Trustee for Region 5.

Page 1 of 12

BOM seeks an order designating Livingston as a "single asset real estate" ("SARE") debtor as defined by 11 U.S.C. § 101(51B). SARE debtors are expressly excluded from being subchapter V debtors. 11 U.S.C. § 1182(1)(A). Thus, if Livingston is determined to be a SARE, it cannot reorganize under subchapter V. BOM does not seek the dismissal of the Bankruptcy Case, only its conversion to a traditional chapter 11 case.

Two witnesses testified at the Hearing, Michael Bollenbacher, Livingston's managing member, and Kellis A. Moore, Livingston's property manager. By stipulation, BOM introduced into evidence fifteen exhibits labeled as "BOM Exhibits 1-15," and Livingston introduced two exhibits labeled as "Debtor Exhibits 1-2."[1]

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(A) and (O). Notice of the Hearing was proper under the circumstances.

## Facts[2]

At the junction of Highway 463 and Highway 22 in Flora, Mississippi sits the Livingston Township Planned United Development, a recreation of the "Old Town" of Livingston, Mississippi as it existed in the 1830s before it lost its people and charter to the railroad construction boom and westward expansion. (D. Ex. 1). In 2013, Livingston purchased twenty-five acres of commercial property that comprise the planned development by way of a single deed. (BOM Exs. 5, 14). Livingston built roads, utilities, streetlights, and five commercial buildings on the historic town

---

[1] BOM's exhibits are cited as "(BOM Ex. __)"; Livingston's exhibits are cited as "(D. Ex. __)".
[2] The following findings of fact and conclusions of law are made pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

site. (Hr'g at 10:48-10:52 (Dec. 5, 2023)).[3] To finance the construction, Livingston obtained a $5 million loan from BOM and signed a deed of trust. No other lien encumbers the property.

Livingston initially planned to subdivide the land so that each commercial building would sit on its own parcel but believed that Madison County's zoning laws made the process of changing the plat too cumbersome. So Livingston constructed all five buildings on a single parcel. Livingston chose an architectural style and construction materials that evoke the charm of a small town in the 1830s. (D. Ex. 2). Photographs of the buildings, streetlights, and sidewalks confirm that the planned development succeeded in recreating Livingston's "Old Town" square. (D. Ex. 2; Hr'g at 11:50).

As of its bankruptcy filing, Livingston owned four commercial buildings leased to: (1) The Gathering, a restaurant that includes the Livingston Mercantile Store and gas station;[4] (2) Livingston Viking, LLC, a cooking school; and (3) Plato Feliz Mexican Bar & Grill. Livingston's fourth building is the only two-story structure on the town square and houses the following tenants: The Cedar Rose Boutique (a women's clothing shop), The Palmetto (a men's clothing shop), Livingston Candy & Creamery (a candy store), The Briar Patch (a bar), a hair salon, a business office, and Livingston Cellars (a liquor store).[5] Livingston's revenues consist solely of rental income from its tenants. (BOM Ex. 11).

---

[3] The Hearing was not transcribed. Citations are to the timestamp of the audio recording.

[4] Livingston Mercantile Store, Inc. d/b/a "The Gathering" and "Livingston Mercantile" filed a motion to compel Livingston to accept or reject its lease or, alternatively, for relief from the automatic stay. (Dkt. #114). BOM and Livingston filed responses opposing that motion, and the Subchapter V Trustee joined in Livingston's response. (Dkt. #148, #149, #150).

[5] Livingston has filed motions to assume the leases of The Cedar Rose Boutique (Dkt. #58), The Palmetto (Dkt. #59), Livingston Candy & Creamery (Dkt. #66), The Briar Patch (Dkt. #67), the hair salon (Dkt. #68), and the business office (Dkt. #69). These motions are set for hearing on January 8, 2024.

According to BOM, Livingston failed to make its monthly mortgage payment due on April 1, 2023 and has not made any payments since then. BOM declared the note in default and began foreclosure proceedings.

Before filing bankruptcy, Livingston negotiated the sale of the building occupied by Plato Feliz Mexican Bar and Grill,[6] but before the sale could close, BOM scheduled the foreclosure of its properties. To stop the foreclosure, Livingston filed a chapter 11 bankruptcy petition on November 6, 2023. (BOM Ex. 1). In its petition, Livingston chose to proceed under subchapter V of chapter 11. It did not designate itself as a "single asset real estate" ("SARE") debtor.

Livingston's bankruptcy schedules list the commercial real estate development as its primary asset, which it values at $5,600,000. (Dkt. #2). According to BOM, Livingston owes $5,021,380.78 on the note as of the petition date. (Dkt. #37).

Livingston filed a motion seeking approval of the sale of the Plato Feliz Mexican Bar and Grill building, which it had negotiated before the bankruptcy filing. (Dkt. #32). Livingston explained that the land on which the building sits will be subdivided at the closing. The Court approved the sale at a hearing held the same day as the SARE Motion hearing, and the sale order has now become final. (Dkt. #118).

In the present SARE Motion, BOM contends that Livingston is a SARE debtor and, therefore, is not eligible to be a subchapter V debtor. (Dkt. #37). BOM asks the Court to require Livingston to proceed in the Bankruptcy Case as a chapter 11 debtor without the advantages of a subchapter V filing.[7] Livingston and the Subchapter V Trustee oppose the SARE Motion. (Dkt. #87, #90).

---

[6] The building straddles land owned by B&S MS Holdings, LLC, who agreed to the sale. (Dkt. #32).
[7] Subchapter V offers many advantages that are unavailable in a traditional chapter 11 case. For example, there are less administrative costs, and a subchapter V debtor may be able to cramdown a nonconsensual

## Discussion

The Bankruptcy Code defines the term "single asset real estate" as "real property constituting a single property or project . . . which generates substantially all of the gross income of a debtor . . . and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B). The Fifth Circuit Court of Appeals has held that this definition requires a debtor to meet the following three-prong test to qualify as a SARE entity:

> (1) the debtor must have real property constituting a single property or project (other than residential real property with fewer than 4 residential units), (2) which generates substantially all of the gross income of the debtor, and (3) on which no substantial business is conducted other than the business of operating the real property and activities incidental thereto.

*Ad Hoc Grp. of Timber Noteholders v. Pac. Lumber Co. (In re Scotia Pac. Co.)*, 508 F.3d 214, 220 (5th Cir. 2007). All three requirements must be met for a debtor to be deemed a SARE. *Id*. If any prong is not met, the debtor is not a SARE debtor. *Id*.

In bankruptcy cases before 1994, the term SARE was a "well-known and often used colloquialism[] which essentially refer[red] to real estate entities attempting to cling to ownership of real property in a depressed market . . . rather than businesses involving manufacturing, sales or services." *Centofante v. CBJ Dev., Inc. (In re CBJ Dev., Inc.)*, 202 B.R. 467, 471 (B.A.P. 9th Cir. 1996). In 1994, Congress added the SARE definition to the Bankruptcy Code to address potential bad-faith filings for chapter 11 relief. *See* 11 U.S.C. § 101(51B); *In re McGreals*, 201 B.R. 736, 740-41 (Bankr. E.D. Pa. 1996). At that time, the sole purpose of a SARE designation was its effect on the automatic stay. *Id*. In a SARE case, a creditor may obtain relief from the automatic stay to

---

plan without complying with the "absolute priority rule." *See In re Sullivan*, 626 B.R. 326, 330 (Bankr. D. Colo. 2021).

foreclose on real property if the debtor fails either to file a plan within ninety days or make monthly payments under 11 U.S.C. § 362(d)(3).

Then, in 2019, Congress amended chapter 11 to add subchapter V to streamline the bankruptcy process for small business debtors for whom the cumbersome and often expensive provisions of chapter 11 did not provide effective relief. 11 U.S.C. §§ 1181-1195. But Congress limited subchapter V to the subset of chapter 11 debtors that: (1) are "engaged in commercial or business activities . . . , *excluding a person whose primary activity is the business of owning single asset real estate*"; and (2) owe total secured and unsecured debts in an amount not more than $7,500,000 as of the filing of the petition, with at least fifty percent (50%) of that debt arising from commercial or business activities. 11 U.S.C. § 1182(1)(A) (emphasis added). As the emphasized language demonstrates, Congress explicitly excluded a SARE entity from being a subchapter V debtor. 11 U.S.C. § 1182(1)(A). Here, BOM argues that Livingston falls within the definition of a SARE entity and is ineligible to proceed as a subchapter V debtor in the Bankruptcy Case because: (1) it owns one asset, a commercial real estate development; (2) it derives its income solely from rents; and (3) its expenses are solely related to the operation and maintenance of the buildings it leases. (Dkt. #37).

Livingston does not dispute that it generates substantially all of its gross income from its real estate but insists that it does not satisfy the first or third prongs of the Fifth Circuit's SARE test. Livingston asserts that is neither a "single property" nor a "single project" and that, with respect to its two-story building, it conducts substantial business "other than the business of operating the real property." (Dkt. #87).

A.    **Does Livingston's real property constitute a single parcel or single project?**

Livingston acquired the land from a single grantor by way of a single deed; its land sits on a single parcel; its buildings are within walking distance of each other; and its properties are subject to a single mortgage. Only because of an error in either the survey or legal description, part of the Plato Feliz Mexican Bar & Grill building sits on land acquired by B&S MS Holdings, LLC[8] in 2019. (BOM Ex. 9; Hr'g at 11:23). A map introduced into evidence shows the extent to which this building actually straddles the property line. (BOM Ex. 12). At the Hearing, Bollenbacher testified that Livingston did not discover the mistake until a few months ago. (Hr'g at 10:58).

BOM suggests that the Court should treat Livingston's property as a single parcel anyway because: (1) Livingston intended to construct the building on its own property; (2) the restaurant tenant pays rent to Livingston, not to B&S MS Holdings, LLC; and (3) Bollenbacher owns an interest in both Livingston and B&S MS Holdings, LLC. The Court finds it unnecessary to consider BOM's argument. *See e.g., In re Amagansett Family Farm, Inc.*, 11-73929, 2011 WL 5079493 (Bankr. E.D.N.Y. Oct. 25, 2011) (holding that three adjacent parcels owned by related entities constituted a SARE). Even if Livingston's planned development is not a "single parcel," it clearly qualifies as a "single project," and the SARE definition encompasses both single properties and single projects.

To be considered a "single project," properties must be linked together by "common usage" or in pursuit of a common purpose. *In re Evergreen Site Holdings, Inc.*, 652 B.R. 307, 318 (Bankr. S.D. Ohio 2023). Examples include apartment complexes, office buildings, shopping centers, and large resorts. *Compare In re Vargas Realty Enters., Inc.*, No. 09-10402, 2009 WL 2929258 (Bankr. S.D.N.Y. July 23, 2009) (residential apartment building was SARE) *and In re Webb Mtn. LLC*,

---

[8] B&S MS Holdings, LLC is owned by Bollenbacher and Marna Sharpe. (Hr'g at 10:49). Bollenbacher signed Livingston's bankruptcy petition as its managing member. (Dkt. #1; BOM Ex. 1).

No. 07-32016, 2008 WL 7656271 (Bankr. E.D. Tenn. Mar. 6, 2008) (undeveloped land intended to be used as a golf resort and spa was a SARE) *with In re McGreals*, 201 B.R. at 742-43 (two parcels of real estate sharing a common border where one parcel was rented and the other was vacant land did not constitute SARE).

Here, Livingston's buildings are part of a larger planned development, vetted and approved by Madison County's Board of Supervisors, that recreates the "Old Town" of the 1830s. Livingston acquired the land in a single transaction, and all its properties are subject to a single mortgage. Livingston's buildings reflect the same architectural style and are within walking distance to one another. All utilities are in Livingston's name. (Hr'g at 11:32-37). The buildings are commercially connected. For example, Livingston Viking, LLC's lease requires it to purchase "wine and spirits" from Livingston Cellars. (Dkt. #101-1 at 24).

In support of its argument that the buildings operate independently, Livingston points to the variety of businesses operated by its tenants—two restaurants, a bar, a general store, a liquor store, a gas station, a hair salon, a cooking school, and two clothing boutiques. According to Livingston, the multiple uses of its buildings underscore that no single project exists. The Court finds Livingston's argument unpersuasive. "[T]he definition of SARE in 11 U.S.C. §101(51B) takes no account of the business activities of a debtor's tenants, and those activities are irrelevant to determining whether a property constitutes a SARE." *See In re JMM Int'l Corp.*, 467 B.R. 275, 278 (Bankr. E.D.N.Y. 2012). Livingston's use of its buildings is singular—to generate rental income notwithstanding the various uses of the buildings by its commercial tenants.

Next, Livingston argues that it does not operate its real estate as a common project because of the additional services it provides to its two-story-building tenants. Those tenants signed full-service leases that require Livingston to provide janitorial services and all necessary repairs and

maintenance. To oversee these services, Livingston hired Kellis A. Moore as its property manager, and the Court recently approved Livingston's application to continue her employment post-petition at a flat rate of $500 per month. (Hr'g at 11:18; Dkt. #53, #138).

In support of its argument, Livingston relies on *In re Yishlam, Inc.*, 495 B.R. 328 (Bankr. S.D. Tex. 2013). There, the debtor owned twenty condominiums in two separate apartment buildings, known as the Excelsior and the Colonial. The debtor operated the buildings differently. The Excelsior units were part of an independent condominium association, whereas the Colonial units were not. As a result, the condominium association controlled the common areas of the Excelsior, but the debtor continued to manage the common areas at the Colonial. *Id*. at 331. The bankruptcy court found that the debtor did not acquire or develop the buildings pursuant to a common scheme or purpose and, therefore, ruled that it did not qualify as a SARE debtor. *Id.* at 332. Livingston argues that its four buildings likewise do not constitute a common scheme or purpose because of the additional services it provides its two-story-building tenants.

The Courts finds *Yishlam* inapposite. Although the bankruptcy court in *Yishlam* noted that control of the common areas differed in each apartment building, it did not rely on that fact alone in making its decision. Instead, the bankruptcy court emphasized that no evidence was presented that the debtor ever intended to operate the two apartment buildings as a single project. *Id*. at 331. There was no planned development, the buildings did not share the same architectural style, the debtor purchased the units at different times, the units at the Excelsior were of higher quality, and tenants at the Excelsior paid higher rent than tenants at the Colonial. *Id*. at 331-32.

Finally, Livingston argues that its intent to subdivide the property and sell some buildings, while retaining others, in a proposed plan of reorganization supports a finding that the development does not constitute a single project. The Subchapter V Trustee echoes that sentiment in his written

response to the SARE Motion. (Dkt. #90). He suggests that Livingston's ability to subdivide its land and sell its buildings individually demonstrates that the development is not a SARE. (Dkt. #90 at 2). Neither Livingston nor the Subchapter V Trustee, however, offers any legal authority that the potential for a successful reorganization is a relevant factor in making a SARE determination. *Shady Bird Leasing, LLC v. Source Hotel, LLC (In re Source Hotel, LLC)*, 606 F. Supp. 3d 952 (C.D. Cal. 2022). Moreover, the SARE determination requires the Court to evaluate Livingston's business activities surrounding the petition date, not its plans for the future. *Id*. at 962. Simply put, the inquiry is contemporary in focus rather than prospective or retrospective.

Having concluded that Livingston meets the definition of a "single project," the Court turns next to whether Livingston conducts substantial business other than the business of operating its real property.

**B.    Does Livingston conduct substantial business other than managing its real property?**

A debtor falls within the definition of SARE when its revenue is passive in nature (i.e., collection of rent) and the debtor is not "engaged in commercial or business activities . . . [other than] the business of owning single asset real estate." 2 COLLIER ON BANKRUPTCY ¶ 101.51B (16th ed. 2023). As to the buildings occupied by the restaurants, mercantile store, and cooking school, Livingston admits that it does not conduct substantial business activities other than merely managing the properties. It insists, however, that its activities in the two-story building go beyond those incidental to its operation because those tenants have full-service leases. Livingston compares the janitorial services it provides to its two-story-building tenants to the services that hotels provide to their overnight guests.[9]

---

[9] Livingston acknowledges that its janitorial services do not generate additional income but argues that the SARE definition does not require a debtor to earn additional income from supplying extra services but only that the debtor do something other than rent space. *In re ENKOGSI, LLC*, 626 B.R. 860, 865 (Bankr. M.D. Fla. 2021).

Livingston likens its business model to that of a hotel, rather than to a shopping mall or an apartment complex, presumably because hotels are rarely considered SARE entities. *In re Iowa Hotel Investors, LLC*, 464 B.R. 848 (Bankr. N.D. Iowa 2011). Hotels, unlike other commercial rental properties, almost always provide an array of services independent from their core business of providing rooms. On a daily basis, hotels must check-in guests, answer telephone calls, clean and maintain the rooms, and change bed linens, and many hotels provide complimentary breakfasts and laundering services. These services require hotels to hire numerous staff positions. In contrast, shopping malls, apartment complexes, and office buildings are usually considered to be SARE entities because the services they provide are often limited to maintenance and are considered to be incidental. *In re ENKOGSI, LLC*, 626 B.R. at 864.

The Court finds that Livingston is more similar to a shopping mall or apartment complex than a hotel. Livingston has only one employee, Kellis A. Moore, who it hired only six or seven months before filing bankruptcy, and her duties are limited as reflected by the $500 per month that Livingston has agreed to pay her. In a similar case, *Kara Homes, Inc. v. National City Bank (In re Kara Homes, Inc.)*, 363 B.R. 399 (Bankr. D.N.J. 2007), the debtor owned a real estate development project for the construction and sale of single-family homes and condominiums. *Id*. at 400-01. The debtor argued that its business operations were sufficiently active to preclude it from being deemed a SARE. Those activities included acquiring developable land, designing homes and/or condominiums suitable to that land, arranging for the construction of the homes and/or condominiums, building a common space, amenities, and roadways, and marketing and selling the homes and/or condominiums. The bankruptcy court explained that a business would not be a SARE "if a reasonable and prudent business person would expect to generate substantial revenues from the operation activities—separate and apart from the sale or lease of the underlying real estate." *Id*. at 406. The

bankruptcy court concluded that the debtor fell within the SARE definition because its business operations were merely incidental to its efforts to sell the homes or condominiums. "[N]o one could reasonably expect to generate income from the activities undertaken by the [debtor] if the eventual sale of the real estate was not possible." *Id*.

## Conclusion

For the above reasons, the Court finds that Livingston operates its real estate as a "single project," obtains all of its revenue from rental income, and does not engage in any active business other than managing its properties. *Scotia*, 508 F.3d at 221.

IT IS, THEREFORE, ORDERED that the SARE Motion is hereby granted. Livingston meets the definition of "single asset real estate" within the meaning of 11 U.S.C. § 105(51B) and is ineligible to be a subchapter V debtor.

IT IS FURTHER ORDERED that Livingston's subchapter V election is hereby revoked, and this Bankruptcy Case shall proceed under the applicable provisions of chapter 11.

##END OF ORDER##